The STATE of Ohio, Appellee,

v.

SIBERT, Appellant.

[Cite as *State v. Sibert* (1994), 98 Ohio App.3d 412.]

Court of Appeals of Ohio,
Adams County.

No. 93CA562.

Decided Nov. 4, 1994.

---

414

416

418

*Gregory A. Carroll*, Adams County Prosecuting Attorney, for appellee.
*Charles H. Wilson, Jr.*, for appellant.

HARSHA, Presiding Judge.

Jeffrey B. Sibert appeals from a judgment of conviction and sentence entered by the Adams County Court of Common Pleas. A jury convicted appellant of three counts of rape, in violation of R.C. 2907.02(A)(1)(b), with force specifications under R.C. 2907.02(B). He assigns twelve errors.

The Adams County Grand Jury indicted appellant alleging that appellant forcibly raped three different boys on separate dates in June and November 1991 and January 1992. All three victims were under age thirteen at the time of the alleged offenses and are brothers. Prior to trial, the state filed a motion requesting that the court allow the victims to testify by closed circuit television pursuant to R.C. 2907.41(C). At a hearing, clinical psychologist Dr. Bruce Kline, Psy.D., testified that the boys would suffer serious emotional trauma if they were forced to testify directly in front of appellant. The trial court then ruled that Marshall, age ten, and William, age nine, could testify by closed circuit television, but John, age twelve at the time of the trial, must testify in court.

At trial, the victims' mother testified that she met appellant in 1985 and that appellant became a close friend of the family. Appellant's mother baby-sat for the children and she would allow appellant to watch the kids. The victims' mother also testified that the last time appellant would have been in her home was January 1992. She testified that she observed marked emotional changes in the victims after appellant was arrested.

Each victim testified that appellant pulled down the boy's pants and sucked on his penis while holding him down. Marshall testified that appellant, on the same date, raped him three times, twice at his house and once at appellant's house. John, the oldest boy, testified that appellant told him that if he told anyone what

appellant had done, appellant would chop John's twin sister into pieces, feed her to the cows, and also hurt him. John also corroborated the youngest boy Billy's story that John walked into the bedroom one time and saw appellant and Billy lying on the bed, and that Billy did not have pants on.

At trial, Dr. Kline testified that after examining the victims on four occasions and performing a number of tests on them, he concluded that the victims' reactions were consistent with allegations of sexual abuse. On redirect exam, Dr. Kline repeated his testimony from the earlier hearing, testifying that he believed that forcing the children to testify directly in the presence of appellant would cause them serious emotional trauma.

The state also presented the testimony of Patrolman Chuck Jones of the village of Seaman Police Department. Patrolman Jones testified that on the day appellant was arrested, Jones interviewed appellant on audio tape. The court then allowed Jones to play the tape for the jury, deleting a portion of the taped statement. On the tape, appellant first denied all allegations of sexual contact between himself and the victims. The audio tape was then turned off. Nine minutes later, Jones turned the tape back on and appellant conceded that he had "sexual contact" with the boys. He also made statements that he needed help, he was sick, and he thought he had his problems cured, but now he guessed they were worse.

The defense presented numerous friends and family of appellant as witnesses. They all testified that they had seen the victims and observed them get along very well with appellant, showing no signs of fear or dislike toward appellant. In addition, several witnesses testified that they trusted appellant to baby-sit their children. Appellant took the stand in his own defense and denied the allegations against him. He attempted to explain his taped statement in which he admitted having sexual contact with two of the boys. Appellant said that when the tape was turned off between the first and second statement, Patrolman Jones and village of Seaman Chief of Police Crawford told him that if he ever kissed one of the boys on the cheek or forehead, that constituted sexual contact. Because he was close to the boys, appellant testified he had kissed them in that way and therefore stated on the tape that he had had sexual contact. Appellant also offered explanations for his other statements on the tape. Further, appellant testified that the last time he was with the victims was New Year's Day 1992, i.e., before Marshall's alleged rape.

The trial court instructed the jury on the rape charge, but refused appellant's request for an instruction on the lesser included offense of gross sexual imposition, a violation of R.C. 2907.05(A). The jury requested, and the court allowed, a replaying of appellant's taped statement. The jury found appellant guilty of all charges. The trial court sentenced appellant to three life sentences, with the

sentences on counts one and two running consecutively and count three running concurrently with counts one and two. The trial court entered the judgment of guilt and sentence and overruled appellant's motion for a new trial.

In his first two assignments of error, appellant challenges specific aspects of the application of R.C. 2907.41(C). The General Assembly has provided a procedure which allows child rape victims who are under age eleven to testify in a room other than that in which the proceeding is being held, by closed circuit television. R.C. 2907.41(C).[1] Appellant does not challenge the constitutionality of this procedure. We note, however, that the Ohio Supreme Court has held that the provisions of R.C. 2907.41(A) and (B) regarding the use of videotaped depositions of child witnesses do not violate a criminal defendant's right of

---

1. R.C. 2907.41(C) provides:

"In any proceeding in the prosecution of any charge of a violation listed in division (A)(1) of this section in which an alleged victim was a child who was under eleven years of age when the complaint, indictment, or information was filed, whichever occurred earlier, the prosecution may file a motion with the judge requesting the judge to order the testimony of the child victim to be taken in a room other than the room in which the proceeding is being conducted and be televised, by closed circuit equipment, into the room in which the proceeding is being conducted to be viewed by the jury, if applicable, the defendant, and any other persons who are not permitted in the room in which the testimony is to be taken but who would have been present during the testimony of the child victim had it been given in the room in which the proceeding is being conducted. Except for good cause shown, the prosecution shall file such a motion at least seven days before the date of the proceeding. The judge may issue such an order, upon motion of the prosecution, if the judge determines that the child victim is unavailable to testify in the room in which the proceeding is being conducted in the physical presence of the defendant, for one or more of the reasons set forth in division (E) of this section. If a judge issues such an order, the judge shall exclude from the room in which the testimony is to be taken every person except a person described in division (A)(2) of this section. The judge, at his discretion, may preside during the giving of the testimony by electronic means from outside the room in which it is being given, subject to the limitations set forth in division (A)(2) of this section. To the extent feasible, any person operating the televising equipment shall be hidden from the sight and hearing of the child victim giving the testimony, in a manner similar to that described in division (A)(2) of this section. The defendant shall be permitted to observe and hear the testimony of the child victim giving the testimony on a monitor and shall be provided with an electronic means of immediate communication with his attorney during the testimony, but shall be restricted to a location that is such that he cannot be seen or heard by the child victim giving the testimony, except on a monitor provided for that purpose. The child victim giving the testimony shall be provided with a monitor on which he can observe, during his testimony, the defendant."

Division (E) of R.C. 2907.41 provides:

"For purposes of divisions (C) and (D) of this section, a judge may order the testimony of a child victim to be taken outside the room in which the proceeding is being conducted if the judge determines that the child victim is unavailable to testify in the room in the physical presence of the defendant due to one or more of the following:

"(1) The persistent refusal of the child victim to testify despite judicial requests to do so;

"(2) The inability of the child victim to communicate about the alleged violation because of extreme fear, failure of memory, or another similar reason;

"(3) The substantial likelihood that the child victim will suffer serious emotional trauma from so testifying."

confrontation guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. *State v. Self* (1990), 56 Ohio St.3d 73, 564 N.E.2d 446, paragraph one of the syllabus. Ohio courts have not specifically addressed the constitutionality of the procedures for use of closed circuit television under R.C. 2907.41(C). However, the United States Supreme Court has held that the Sixth Amendment to the United States Constitution does not prohibit the use of one-way closed circuit television for testimony of a child witness, when testimony in the courtroom will cause the child "serious emotional distress such that the child cannot reasonably communicate." *Maryland v. Craig* (1990), 497 U.S. 836, 856, 110 S.Ct. 3157, 3169, 111 L.Ed.2d 666, 685. The Ohio Supreme Court has stated that there is no significant difference between the Ohio statute and the statute approved in *Craig*. *Self, supra*, 56 Ohio St.3d at 78, 564 N.E.2d at 451. Further, the *Self* court expressed its belief that the standard of emotional distress approved in *Craig* is not materially different from Ohio's standard of "serious emotional trauma" and that Ohio's statute intrudes less upon the defendant's confrontation rights than the statute in *Craig* because Ohio's procedure specifically requires that the defendant be visible to the child witness. *Id.* at 78, 564 N.E.2d at 452, fn. 5.

First Assignment

"The court erred in finding that two of the alleged victims would suffer serious emotional distress if they were to testify in the presence of the defendant and in permitting such testimony by closed circuit television pursuant to R.C. 2907.41(C)."

■ Appellant contends the trial court erroneously found that R.C. 2907.41(C) should be applied. Following a hearing, the trial court found that William and Marshall were under eleven years of age at the time of the indictment and that there was a substantial likelihood they would suffer serious emotional trauma from testifying in the physical presence of appellant. R.C. 2907.41(E)(3). Obviously, the state must prove each element of a crime beyond a reasonable doubt. However, preliminary factual questions need only be established by a preponderance of the evidence regardless of whether the case is civil or criminal in nature. See *State v. Canalos* (June 26, 1991), Athens App. No. 1442, unreported, 1991 WL 122838, citing *Bourjaily v. United States* (1987), 483 U.S. 171, 175, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144, 152. Thus, we review the trial court's factual findings by determining whether the findings are supported by some competent, credible evidence. *Self,* 56 Ohio St.3d at 80, 564 N.E.2d at 453, citing *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

■ Appellant argues under this assignment of error that Dr. Kline did not give the facts and data underlying his opinion as required by Evid.R. 705. This argument is without merit. Dr. Kline testified:

"[W]e administered a variety of assessment measures including the House Tree Person Projective Test, the Children's Depressant Inventory, the Children's Anger Inventory, the Kinetic Family Drawing, the Cooper–Smith Self–Esteem Inventory, the Incomplete Sentences Inventory, the Children's Apperception Test to each of the children involved and from those data and from the interviews that we did with them and the observations that we did with them and the use of anatomically correct dolls, et cetera, we came to the opinion that I was about to give to you."

He further testified that he and his assistant met with each child three times, he described the visits, and he explained his experience in working with sexually abused children. Thus, Dr. Kline set forth the underlying facts and basis for his opinion. See *State v. Burrell* (1993), 89 Ohio App.3d 737, 742, 627 N.E.2d 605, 608; *State v. Proffitt* (1991), 72 Ohio App.3d 807, 596 N.E.2d 527.

■ Appellant also mentions briefly that Dr. Kline's opinion was not tied in with "psychological certainty." Generally, as a foundational requirement, expert opinions are stated "to a reasonable degree of professional certainty." Dr. Kline testified:

"[I]t is my professional opinion that forcing these young children to confront their perpetrator at this time would be very detrimental to them. It would cause them serious emotional trauma. We believe that it would cause them long term trauma, not just short term trauma and we strongly encourage you to allow them to testify via close circuit television and/or deposition matters so that they do not have to confront the perpetrator in this case."

Although appellant did object several times to Dr. Kline's opinion, appellant never raised lack of foundation as a basis for the objection. Error may not be predicated upon a ruling admitting evidence unless the complaining party objected, stating the specific ground for the objection. Evid.R. 103(A)(1). Thus, because appellant did not specifically object on the foundational basis at a time when it could be cured, he waived any claim of error. *State v. Rapp* (Jan. 12, 1994), Ross App. No. 1912, unreported, at 10, 1994 WL 8296; *Johnston v. Univ. Mednet* (Aug. 11, 1994), Cuyahoga App. No. 65623, unreported, 1994 WL 422274, appeal pending in 94–2066; *State v. Cotton* (Mar. 18, 1993), Cuyahoga App. No. 62105, unreported, 1993 WL 101819. However, even if appellant did not waive this alleged error, we would find this argument to be without merit. We believe that using the term "professional opinion," as Dr. Kline did here, can demonstrate

sufficient certainty of conclusions. We hold that Dr. Kline stated his opinion with sufficient certainty and that the court did not err in admitting it.

Having addressed appellant's specific claims, we have reviewed the record of the hearing on the state's motion and find sufficient competent, credible evidence supporting the trial court's factual finding that there was a substantial likelihood that Marshall and William would suffer serious emotional trauma if forced to testify in the same room as appellant. We therefore overrule appellant's first assignment of error.

Second Assignment

"The court erred in so arranging the closed circuit testimony of the two alleged victims, pursuant to R.C. 2907.41(C), that the defendant was limited in contacting his counsel and improperly displayed before the jury during their testimony."

■ Appellant challenges the physical setup of the closed circuit television system. Marshall and William testified from the court's chambers adjacent to the courtroom. A camera in the court's chambers filmed the witness, who was seen in the courtroom on three monitors, one in front of the jury, one in front of appellant, and one in front of the court. A second camera filmed appellant, displayed to the child witness on a monitor set up in the court's chambers. Appellant could communicate privately with his attorney through a headset and microphone system. Appellant did not specifically object to the courtroom setup. See Evid.R. 103(A)(1); *Rapp* and *Cotton, supra.*

However, even if appellant had objected, we would find no error. The setup complied with the statutory requirements of R.C. 2907.41(C). Appellant could adequately communicate privately with his attorney. Appellant contends that having a video camera focused on him overemphasized the claimed trauma of the children and his possible involvement. However, we cannot see how that would be true. During every trial, the defendant sits in front of the jury throughout the proceeding and the witnesses are given the opportunity to observe and identify him. Accordingly, we find no prejudicial error and overrule appellant's second assignment of error.

Third Assignment

"The court erred in permitting the mother of the three alleged victims to express her prior distrust of defendant and what she subsequently was informed about him and in not instructing the jury to disregard certain inadmissible evidence."

■ Appellant contends that the trial court made several evidentiary errors during the victims' mother's testimony. Generally, the admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v.*

*Lowe* (1994), 69 Ohio St.3d 527, 532, 634 N.E.2d 616, 620; *State v. Steen* (June 28, 1994), Vinton App. No. 93CA490, unreported, 1994 WL 322963.

An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 498, 506, 589 N.E.2d 24, 30; *Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622, 624. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 138, 566 N.E.2d 1181, 1184, citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308.

On direct examination, the prosecutor asked the victims' mother whether she was aware from personal knowledge that appellant did anything improper to her sons. She stated: "We had various complaints from—" and was cut off by appellant's counsel's objection, which the trial court sustained. The victims' mother responded to the question, "had you ever seen [appellant] do anything that you considered sexually inappropriate towards your boys?" by saying "sexually inappropriate, no. Inappropriate—." The trial court refused to allow the witness to finish the statement, instructing her that she may not answer a question when an objection has been sustained. Later, the state asked the victims' mother: "Did you have any reason to distrust [appellant] prior to [the date of his arrest]?" She responded: "In the later part of 1991, we uh, my mother-in-law saw him climb—." The trial court sustained appellant's objection.

Appellant contends that the trial court committed reversible error in the above incidents because although the court sustained the objections, it did not instruct the jury to disregard the statements. We disagree. Appellant did not, at the time the court sustained his objections, ask the court to instruct the jury to disregard the questions and statements made before the objection was made. Therefore, any error arising from that failure would be waived. Evid.R. 103; *State v. Roe* (1989), 41 Ohio St.3d 18, 23, 535 N.E.2d 1351, 1358. However, even if appellant did not waive this error, we would overrule this assignment of error. In the closing instructions, the court told the jury:

"Statements or answers to questions which were stricken by the court or which you were instructed to disregard are not evidence and must not be treated, and you must treat them as though you never heard them. You must not speculate as to why the Court sustained any objection to a question or what the answer to that question would have been. You must not draw any inference or speculate on the truth of any suggestion included in the question which was not answered."

Reviewing courts presume that a jury follows the instructions given to it. *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph four of the syllabus; *State v. Wasmer* (Mar. 16, 1994), Jackson App. No. 714, unreported, at 10, 1994 WL 90400. Accordingly, appellant was not prejudiced by the above comments.

The following examination also occurred during the direct testimony of the victims' mother:

"Q. And that would be the first time that you knew about the allegations that your boys were making against [appellant]?

"A. The allegations of John and Marshall.

"Q. OK.

"A. It wasn't until later that—

"[Appellant's counsel]: Objection, move that be stricken.

"[Appellee's counsel]: Let her finish her answer.

"Court: Yeah.

"A. It was not until later that day we found out that our third boy was also involved because he remained in school when we took John and Marshall to the police station and Children Services.

"Court: Your objection will be overruled and the answer will stand."

Although appellant objected to the testimony, he did not state the basis for his objection to the trial court. See Évid.R. 103(A)(1); *Rapp* and *Johnston, supra.* Furthermore, appellant does not argue on appeal how the court erred in allowing this testimony or how he was prejudiced by this testimony. Appellants have the burden of showing error and prejudice resulting from that error. *Davidson v. Star Bank* (Sept. 14, 1993), Lawrence App. No. CA934, unreported, at 4, 1993 WL 373791; *State v. Hayes* (July 17, 1992), Ashtabula App. No. 90–A–1558, unreported, 1992 WL 191977. After a thorough review of the record, we do not see any prejudice resulting from this statement and thus overrule appellant's third assignment of error.

Fourth Assignment

"The court erred in permitting the mother of the three alleged victims to express her opinion as to the change in the mental state of her sons."

The victims' mother was permitted to testify that since the date of appellant's arrest, she has noticed very radical changes in all three boys. She testified that John has become violent, Marshall has become very critical and bossy, and William has been having "major nightmares." In this assignment of error, appellant apparently argues that the victims' mother's testimony constitut-

ed a lay witness opinion. The lay opinion testimony rule, Evid.R. 701, provides in pertinent part:

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."

Evid.R. 701 limits the trial court's decision as to admissibility of lay witness opinion testimony in two ways. First, the witness must have firsthand knowledge of the subject of the testimony and the opinion must be one a rational person would form based on the observed facts. Second, the opinion must assist the trier of fact in understanding the testimony of the witness or in determining a fact in issue. *Lee v. Baldwin* (1987), 35 Ohio App.3d 47, 519 N.E.2d 662. The admission of testimony by a lay witness as to opinions or inferences rests within the sound discretion of the trial court and will not be reversed by the reviewing court absent a showing of an abuse of discretion. *Urbana ex rel. Newlin v. Downing* (1989), 43 Ohio St.3d 109, 539 N.E.2d 140; *State v. Myers* (1993), 87 Ohio App.3d 92, 98, 621 N.E.2d 881, 885. As noted above, an abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *State v. Lessin* (1993), 67 Ohio St.3d 487, 494, 620 N.E.2d 72, 78; *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 112, 616 N.E.2d 218, 222. When based on personal observations, a lay witness may testify about another's emotional state, physical condition or sanity. *State v. Morris* (1982), 8 Ohio App.3d 12, 8 OBR 13, 455 N.E.2d 1352; *Shoemaker v. Shoemaker* (Sept. 9, 1992), Pike App. No. 468, unreported, 1992 WL 226349.

We cannot say that the trial court abused its discretion here. Assuming that the victims' mother's testimony that all three victims have changed radically is an opinion or conclusion, such statement meets the requirements of Evid.R. 701. The victims' mother testified that all three boys lived with her and she gave specific examples of what she had personally noticed about their emotional condition and personality. Such testimony was helpful to the jury in determining the credibility of the victims' testimony that they had been raped by appellant. We thus overrule appellant's fourth assignment of error.

Fifth Assignment

"The court erred in not permitting counsel to comment in his closing argument on the failure of the state to have the father or other family members of the alleged victims testify or to have the Chief of Police who assisted in the taping of defendant's statement testify at the trial."

During closing arguments, appellant's counsel attempted to comment upon the fact that the state did not call to testify the victims' father, brother or

sister or Chief of Police Crawford. The trial court sustained the state's objection and refused to allow counsel to comment upon the failure to call those witnesses.

Pursuant to R.C. 2907.41(C), the child witness who is testifying via closed circuit television is allowed to have in the room with him or her a support person who then may not be called as a witness. R.C. 2907.41(C). Prior to the closed circuit television testimony, the state designated the father as the children's support person and removed him from the list of potential witnesses. Appellant's counsel replied: "I agree with him what he says is correct, that he cannot be a witness." Thus, because appellant's counsel agreed that the victim's father could not testify, we see no basis upon which he could comment upon the failure of the state to call him as a witness.

Appellant's counsel also wanted to tell the jury that the state did not call the victims' brother or sister or Seaman Police Chief Crawford, all of whom the state listed as potential witnesses in the discovery provided to the defense. Crim.R. 16(B)(4) specifically provides:

"Witness list; no comment. The fact that a witness' name is on a list furnished under subsections (B)(1)(b) and (f), and that such witness is not called shall not be commented upon at the trial."

Thus, the clear language of Crim.R. 16(B)(4) prohibits defense counsel from commenting upon the fact that certain potential witnesses were not called to testify by the state. See *State v. Owens* (Dec. 29, 1993), Clark App. No. 3039, unreported, 1993 WL 541638; *State v. Snyder* (Sept. 27, 1993), Fairfield App. No. 18–CA–93, unreported, 1993 WL 405444; see, also, *Jackson v. Howell* (1993), 86 Ohio App.3d 497, 500, 621 N.E.2d 573, 574 (Crim.R. 16[C][3] prohibits the prosecution from commenting upon the defense's failure to call a disclosed witness). Accordingly, the trial court properly limited appellant's counsel and appellant's fifth assignment of error is overruled.

Sixth Assignment

"The court erred in permitting a clinical psychologist to state his opinion as to whether the reactions of the three alleged victims were consistent with the allegations that they were victims of sexual abuse and that the younger two would suffer emotional trauma if they were to confront the defendant when they testified."

In support of this assignment, appellant seems to argue several different errors, although the assignment encompasses only two alleged errors. First, appellant challenges the admissibility of Dr. Kline's testimony that the reactions of the alleged victims to tests performed by Dr. Kline were consistent with

allegations that they are victims of sexual abuse. Appellant's counsel objected at trial, but did not state the basis for his objection. See Evid.R. 103.

The Ohio Supreme Court has held that an expert's opinion testimony on whether a child was sexually abused would aid jurors in making their decision and therefore would be admissible under Evid.R. 702 and 704. *State v. Boston* (1989), 46 Ohio St.3d 108, 128, 545 N.E.2d 1220, 1239. The expert, though, may not testify about the child's veracity. *Id.* at 129, 545 N.E.2d at 1240. In this case, the state did not ask Dr. Kline whether, in his opinion, these children were sexually abused. Instead, Dr. Kline testified that the reactions of the children were consistent with allegations that they were sexually abused. Although this is not specifically the type of evidence admitted in *Boston,* we believe that Dr. Kline's testimony is substantially similar to the testimony approved in *Boston* and would assist the trier of fact in determining whether appellant sexually abused the children. See *State v. Eben* (1992), 81 Ohio App.3d 341, 344, 610 N.E.2d 1109, 1111. Testimony that the children exhibit reactions to anatomically correct dolls and various tests which are consistent with allegations of sexual abuse does not amount to improper testimony about the victims' veracity. See *State v. Stowers* (June 20, 1994), Tuscarawas App. No. 94AP010002, unreported, at 4, 1994 WL 313767. We believe the best way to address any inherent problems with this type of opinion evidence is through cross-examination, rather than a ruling of inadmissibility.

Appellant also argues under this assignment of error that the trial court improperly allowed the state to elicit Dr. Kline's testimony, at trial, that he recommended allowing the victims to testify by closed circuit television because forcing them to testify in appellant's presence would cause serious emotional trauma. Appellant contends that this testimony was irrelevant and thus inadmissible. Evid.R. 402. We agree that such testimony was not relevant to any issue at trial. On cross-examination, appellant elicited from Dr. Kline that he had written a letter to the prosecution following only one examination of the children. Apparently, appellant elicited this testimony in an attempt to impeach Dr. Kline's testimony by showing a prior relationship with the prosecution or that Dr. Kline improperly reached premature conclusions. Appellee then had the right to attempt to rehabilitate Dr. Kline by explaining the purpose of the earlier letter.

Further, even if the court erred in allowing this testimony to be introduced, such error would be harmless. To support the reversal of a judgment, appellant has the burden to establish that any error was prejudicial. *State v. Fluellen* (1993), 88 Ohio App.3d 18, 26, 623 N.E.2d 98, 103 (Harsha, P.J., concurring). Crim.R. 52(A) provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Error in the

admission of evidence in criminal proceedings is harmless if there is no reasonable possibility that the failure to exclude the evidence may have contributed to the accused's conviction. Reviewing courts may declare errors to be harmless when the error is harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *State v. Bayless* (1976), 48 Ohio St.2d 73, 2 O.O.3d 249, 357 N.E.2d 1035. Both Dr. Kline and the children's mother testified about the adverse affects of sexual abuse upon the children. Dr. Kline's added testimony that the children would experience trauma if they confronted appellant does not additionally or unduly prejudice appellant.

Seventh Assignment

"The court erred in permitting a taped statement of the defendant to be played to the jury after the police had ceased questioning him, turned off the tape recorder, and commenced renewed questioning without advising defendant of his Miranda rights."

Appellant contends in this assignment of error that the trial court improperly permitted the state to introduce appellant's taped statement to police on the basis of a *Miranda* violation. See *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Appellant did not file a pretrial motion to suppress this statement pursuant to Crim.R. 12(B)(3), which provides:

"Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. The following *must* be raised before trial:

" * * *

"(3) Motions to suppress evidence, including but not limited to statements and identification testimony, on the ground that it was illegally obtained. Such motions shall be filed in the trial court only[.]"

These pretrial motions shall be filed within thirty-five days after arraignment or seven days before trial, whichever is earlier. Crim.R. 12(C). The failure to move for the suppression of evidence on the basis of illegal obtainment within the time specified by Crim.R. 12(C) constitutes a waiver of the error. Crim.R. 12(G); *State v. F.O.E. Aerie 2295* (1988), 38 Ohio St.3d 53, 55, 526 N.E.2d 66, 67, citing *State v. Wade* (1978), 53 Ohio St.2d 182, 7 O.O.3d 362, 373 N.E.2d 1244, paragraph three of the syllabus; *State v. Moody* (1978), 55 Ohio St.2d 64, 66, 9 O.O.3d 71, 72, 377 N.E.2d 1008, 1010. The trial court has discretion to extend the time for making pretrial motions in the interest of justice. Crim.R. 12(G); *State v. Gullett* (1992), 78 Ohio App.3d 138, 142–143, 604 N.E.2d 176, 178–180; *State v. Cosgrove* (Jan. 5, 1994), Summit App. No. 16326, unreported, at 2, 1994 WL 11038. Thus, because appellant failed to file a motion to suppress, he waived any error in failing to suppress the taped statement based upon *Miranda* violations.

 However, even if appellant had not waived this error, we would find it to be without merit. Appellant contends that the police officers should have readministered the *Miranda* warnings to appellant after the nine-minute break in questioning between the first portion of appellant's taped statement and the second portion. The test of whether the police should have repeated the *Miranda* warnings to appellant is whether, under the totality of the circumstances, the initial *Miranda* warnings became too stale so as to fail to protect appellant from the coerciveness inherent in custodial interrogation. *State v. Cooey* (1989), 46 Ohio St.3d 20, 27, 544 N.E.2d 895, 906, citing *State v. Roberts* (1987), 32 Ohio St.3d 225, 231–233, 513 N.E.2d 720, 725–727. Here, we cannot say that the initial warnings became stale based upon the totality of the circumstances. Appellant presented testimony that he could not read or write and had some learning disability. However, the one break in questioning lasted only nine minutes, appellant did not move from the room where the initial questioning took place, and the same officer interrogated him throughout. Thus, the officer did not need to readvise appellant of his *Miranda* rights. *Cooey, supra* (holding that *Miranda* warnings did not become stale even through breaks of one hour and twenty minutes). Accordingly, we overrule appellant's seventh assignment of error.

Eighth Assignment

"The court erred in not instructing the jury on the lesser, including [*sic*] charge of gross sexual imposition and in not permitting counsel for the defendant to raise the issue in his closing argument to the jury."

 Under R.C. 2945.74 and Crim.R. 31(C), the jury must be instructed on three groups of lesser offenses when supported by the evidence at trial: (1) attempts to commit the crime charged, if such an attempt is an offense at law; (2) inferior degrees of the indicted offense; or (3) lesser included offenses. *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph one of the syllabus. An instruction to the jury on a lesser offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser offense. *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus, clarifying *State v. Kidder* (1987), 32 Ohio St.3d 279, 513 N.E.2d 311; *State v. Davis* (1983), 6 Ohio St.3d 91, 6 OBR 131, 451 N.E.2d 772; *State v. Wilkins* (1980), 64 Ohio St.2d 382, 18 O.O.3d 528, 415 N.E.2d 303. An offense may be a lesser included offense of another if (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense. *Deem, supra,* paragraph three of the syllabus.

 Gross sexual imposition, R.C. 2907.05(A)(3), is a lesser included offense of rape, R.C. 2907.02(A)(1)(b). *State v. Johnson* (1988), 36 Ohio St.3d 224, 522 N.E.2d 1082, paragraph one of the syllabus. Thus, we must determine whether the evidence presented at trial would reasonably support both an acquittal of rape and a conviction upon the lesser offense of gross sexual imposition. *Thomas* and *Johnson, supra.* The crime of rape includes the element of "sexual conduct" defined as " * * * vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

Gross sexual imposition includes instead the element of "sexual contact."

" 'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

 Appellant argues that because the jury heard his taped statement conceding that he had "sexual contact" with the children, the jury could have reasonably found that the violations alleged constituted gross sexual imposition instead of rape. We disagree. A criminal defendant is not entitled to a jury instruction on gross sexual imposition as a lesser included offense of rape where the defendant has denied participation in the alleged offense, and the jury, considering such defense, could not reasonably disbelieve the victim's testimony as to "sexual conduct," and at the same time, consistently and reasonably believe the testimony under a theory of mere "sexual contact." *Johnson, supra,* 36 Ohio St.3d 224, 522 N.E.2d 1082, paragraph two of the syllabus. The only testimony relating to sexual contact was appellant's acknowledgement that he admitted having "sexual contact" with the children because he kissed them on the cheek or forehead on occasion and thought that kissing was sexual contact. Such activity does not fall within the definition of "sexual contact." Appellant's characterization of his acts does not constitute substantive evidence of sexual contact. Each of the victims testified that appellant held him down and appellant put his mouth on the victim's penis. This testimony supports a finding of sexual conduct but not sexual contact. Because the record does not include any evidence of sexual contact, the record could not reasonably support an acquittal on the charge of rape and a conviction on the charge of gross sexual imposition. Accordingly, the trial court properly refused to instruct the jury on gross sexual imposition and appellant's eighth assignment of error is overruled.

Ninth Assignment

"The court erred in permitting a taped statement by the defendant to be replayed to the jury after their deliberations had commenced."

██ Appellant argues under this assignment of error that the trial court abused its discretion in replaying to the jury the taped statement which was admitted into evidence. We approved the admission of this statement into evidence in our resolution of appellant's seventh assignment of error. Appellant does not specifically state a basis for his contention that allowing the jury to hear the tape a second time prejudiced him but merely argues again reasons that the tape should not have been admitted into evidence. A jury is entitled to consider all admitted evidence in determining an accused's guilt or innocence. The taped statement was admitted into evidence. As appellant does not call this court's attention to any undue prejudice resulting from the replaying of the tape, we overrule this assignment of error.

Tenth Assignment

"The court erred in having the defendant serve two of the three life sentences imposed upon him consecutively."

██ Appellant argues that the trial court abused its discretion in ordering him to serve the life sentence on count two consecutively to the life sentence for count one. Pursuant to R.C. 2907.02(B), anyone convicted of a violation of R.C. 2907.02(A)(1)(b) shall be imprisoned for life. A trial court is vested with broad discretion in imposing felony sentences and this court will not reverse the sentence unless it is statutorily incorrect or the trial court abused its discretion by failing to consider sentencing factors. *State v. Hardy* (Aug. 1, 1994), Ross App. No. 93CA1987, unreported, 1994 WL 411363; *State v. Perkins* (Mar. 3, 1994), Cuyahoga App. No. 64714, unreported. As noted above, an abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *Lessin* and *Rock, supra*. R.C. 2929.41 gives the trial court discretion to specify that a sentence shall be served consecutively to another sentence. R.C. 2929.41(B)(1); *State v. Elam* (1994), 68 Ohio St.3d 585, 586, 629 N.E.2d 442, 443; *State v. White* (1985), 18 Ohio St.3d 340, 342, 18 OBR 381, 383, 481 N.E.2d 596, 597. We cannot say that the court abused its discretion and we therefore overrule appellant's tenth assignment of error.

Eleventh Assignment

"The court erred in overruling the defendant's Criminal Rule 29 motions for acquittal at the end of the state's case and at the end of the defendant's case."

██ An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at

trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Flagge* (Apr. 12, 1993), Adams App. No. CA536, unreported, 1993 WL 112560. A Crim.R. 29 motion should be granted only when the evidence is such that any rational fact finder must have a reasonable doubt as to the accused's guilt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 264, 9 O.O.3d 401, 402, 381 N.E.2d 184, 185. The claim of insufficient evidence raises a question of law, the resolution of which does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218, 485 N.E.2d 717, 720, citing *Jackson, supra*, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573; *State v. Sorgee* (1978), 54 Ohio St.2d 463, 8 O.O.3d 452, 377 N.E.2d 782. Such a claim, in effect, tests the *legal* persuasiveness of the state's case. *State v. Brown* (Dec. 14, 1993), Ross App. No. 93CA1938, unreported, at 10, 1993 WL 525000.

Construing the evidence most strongly in favor of the prosecution, the record contains substantial competent credible evidence to support appellant's convictions of three counts of rape, R.C. 2907.02(A)(1)(b), with a force specification, R.C. 2907.02(B). A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit. *State v. Schaim* (1992), 65 Ohio St.3d 51, 600 N.E.2d 661, paragraph one of the syllabus. Each of the three victims testified that in Adams County, on or about the dates alleged in the indictment, appellant held him down and put his mouth on the victim's penis. All three boys testified that in doing this, appellant hurt them. John, the oldest, testified that appellant threatened to hurt him and his twin sister if he told anyone what had happened. Thus, the record contains sufficient evidence to support appellant's convictions, and therefore we overrule appellant's eleventh assignment of error.

Twelfth Assignment

"The court erred in overruling defendant's motion for a new trial."

Following the jury's verdict, appellant filed a motion for a new trial pursuant to Crim.R. 33, listing six grounds which he stated entitled him to a new trial. The motion did not include any argument as to any of the grounds. Crim.R. 33 governs motions for a new trial and provides six different grounds upon which a trial court may grant the defendant a new trial. Except when the motion for a new trial alleges prosecutorial misconduct, see *State v. Swartz* (Apr. 2, 1993),

Meigs App. Nos. 479 and 495, unreported, 1993 WL 97727, a motion for a new trial is addressed to the sound discretion of the trial court. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54; *State v. McMahon* (Apr. 14, 1993), Scioto App. No. 92CA2075, unreported, 1993 WL 120635.

We have already addressed five of appellant's six listed grounds because appellant also assigned them as error on appeal. Because we found no merit in any of the claimed errors, we cannot say that the trial court abused its discretion in denying the motion for a new trial on those grounds.

In the sixth alleged ground for a new trial, appellant claims that the verdict forms were confusing and misleading. This claimed ground appears to be under Crim.R. 33(A)(1), which provides:

"Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:

"(1) Irregularity in the proceedings, * * * because of which the defendant was prevented from having a fair trial * * *."

Appellant does not explain how the verdict forms could have confused or misled the jurors such that they prevented appellant from having a fair trial. As we cannot discern any prejudice, we cannot say that the trial court abused its discretion in denying the motion for a new trial on this ground. Appellant's twelfth assignment of error is overruled.

*Judgment affirmed.*

STEPHENSON and GREY, JJ., concur.