OPINION
Defendant-appellant, John Paglialunga, appeals the decision of the Belmont County Court, Northern Division, finding appellant guilty of one count of driving under the influence, in violation of R.C. 4511.19, and one count of speeding in violation of R.C.4511.21(D)(2).
On November 15, 1997, Trooper Wright of the Ohio State Highway Patrol was parked on Interstate 70 in Pease Township, Belmont County, using stationary radar on west-bound traffic. Wright observed appellant's vehicle coming over a hill at what appeared to him to be an excessive speed. Wright clocked appellant's vehicle traveling at 82 miles per hour. According to Wright, as appellant's vehicle came over the hill, the vehicle traveled over onto the berm towards him. While on the berm, appellant's headlights went out for a second or two and then came back on, at which point the vehicle moved back out to the driving lane.
According to the testimony adduced at trial, Wright then pulled appellant over approximately half-a-mile from where appellant's vehicle had been clocked. Wright asked for appellant's driver's license and registration. While appellant "fumbled" for his license and registration, Wright stuck his head in the window and noticed the odor of an alcoholic beverage coming from the vehicle.
After producing his driver's license and registration appellant was asked to step out of his vehicle. Wright noticed a strong odor of alcohol emanating from appellant's person and on his breath. Wright testified that appellant's eyes were glassy and red, and that his speech was "mushy." Wright asked appellant to perform the Horizontal Gaze Nystagmus (HGN) test, on which appellant demonstrated six clues out of six. Pursuant to a question posed by the trial court, Wright testified that six out of six clues indicates that there is a strong possibility that a person's blood alcohol level could be above the legal limit.
Based upon the results of the HGN test, Wright proceeded with other sobriety tests, specifically a balancing test and a walk-and-turn test. While administering the balancing test, Wright noted that appellant was swaying from side to side, and kept his arms up to balance himself. In addition, during the walk-and-turn test, appellant had to move his feet to keep his balance while Wright was explaining the instructions to him. According to Wright, appellant stopped while he was walking to steady himself, kept his arms six inches out from his sides, and turned incorrectly when he made the turn to come back after the nine steps.
Appellant, testifying in his own defense, stated that Wright failed to inform him that he could not stop in the middle of the walk-and-turn test, and also failed to inform him that he could not raise his arms during the balancing test. In any event, after having administered the sobriety tests, Wright was of the opinion that appellant was under the influence of alcohol and placed appellant under arrest.
At trial, appellant claimed he had been returning from a local tavern called the Lionhead. Appellant testified that he drank three beers between approximately 8:00 P.M. and midnight. Victoria Cope testified that she had bought appellant these three beers on the night in question, but that she did not know if appellant had had other drinks bought by somebody else. In addition, appellant testified that he had stopped drinking around midnight, but had remained at the bar with friends until approximately 2:30 A.M.
A complaint was filed on November 15, 1997 charging appellant with speeding, in violation of R.C. 4511.21(D)(2), driving under the influence, in violation of R.C. 4511.19(A)(1), and driving with a prohibited breath-alcohol concentration, in violation of R.C. 4511.19(A)(3). Appellant filed a motion to suppress on December 17, 1997. The same day, appellant withdrew his motion to suppress in exchange for plaintiff-appellee, the State of Ohio, agreeing to dismiss the charge under R.C. 4511.19(A)(3).
A bench trial was conducted before Judge Frank Fregiato on January 7, 1998. At the conclusion of the trial, appellant was found guilty of driving under the influence, in violation of R.C.4511.19(A)(1), and of speeding, in violation of R.C. 4511(D)(2).
Following his conviction, appellant was sentenced to ten days in jail, seven days of which were suspended, with the remaining three days to be spent at a Driver Intervention Program. Appellant was fined $200.00 and ordered to pay $66.00 in court costs. Appellant had his driver's license suspended for six months and was placed on probation for six months.
On January 7, 1998 appellant filed a motion for stay of execution of sentence, which motion was granted on January 30, 1998. Appellant filed this timely notice of appeal the same day. For ease of presentation we will discuss appellant's assignments of error together.
Appellant brings two assignments of error which state:
 "1. The Trial Court's finding that the Appellant violated Ohio Revised Code, § 4511.19(A)(1) was against the manifest weight of the evidence."
 "2. The Trial Court's questioning of the State's primary witness violated Ohio Evidence Rule 611 [sic.] is an abuse of the court's discretion."
In his second assignment of error appellant argues that counsel for appellee failed to lay a proper foundation for the introduction of the HGN test performed on appellant. In addition, appellant claims it was error for the trial court to question Trooper Wright in an effort to lay the foundation for the evidence, as without a foundation the evidence would have been inadmissible.
In response, appellee claims that the trial court's questioning was simply an impartial attempt to develop facts so that it could more fully understand the issue to be determined in the case. Appellee also argues that appellant's objection at trial was not directed to the alleged lack of foundation but rather to the trial court's control over the questioning of Wright, which appellee claims was not improper.
With respect to the HGN test performed by Trooper Wright, the evidence at trial was as follows:
 "THOMAS [counsel for appellee]: Now did you um. . administer any tests?
 "WRIGHT: Yes sir. I administer all the tests that I normally administer to a person baring [sic.] some type of handicap or hm. .
 "THOMAS: So it would have been pretty standard procedure?
 "WRIGHT: Right. I started with Gaze Nystagmus went to the Balance Test the Walk and Turn and then the One Leg Stand.
 "THOMAS: Could you tell the Court what the results of those tests were?
 "WRIGHT: On the um. . usually the Nystagmus um. . depending on the results of that test it tells me whether to go on with the other tests or not. I had him perform the Nystagmus test. He had six clues out of six on Nystagmus. From that I went to the balance. . .
 "JUDGE: Let's slow down. Six clues out of six and therefore that indicates what to you?
 "WRIGHT: That there is a strong possibility that the person's blood alcohol level could be above the legal limit.
"JUDGE: Okay, go ahead.
 "COSTINE: I'm going to object your Honor to the answer to that question even though the Court asked it. . .
 "JUDGE: Yeah I understand. The Court recognizes that the test results is not a part of this case. The Court recognizes that the blood level is not in issue in this case.
"COSTINE: Thank you.
 "JUDGE: We understand that. The um. . . that part of the case I believe has been withdrawn by the State of Ohio voluntarily. Mr. Thomas please proceed." (Tr. 6-8)
On cross-examination the following exchange occurred:
 "COSTINE [counsel for appellant]: Now the nystagmus test Um. . . are not you instructed that you should give this test twice in each eye to determine the nystagmus?
"WRIGHT: Yes sir."
 "COSTINE: Okay, and you gave it once to Mr. Paglialunga in each eye?
"WRIGHT: I gave the test to him once.
 "COSTINE: Right, Um. . . and this is again on the road at night with flashing lights or oscillating at that time?
"WRIGHT: Yes sir." (Tr. 23-24)
HGN tests have been held to be a reliable indicator of blood-alcohol levels. State v. Bresson (1990), 51 Ohio St.3d 123,128. "A properly qualified officer may testify at trial regarding a driver's performance on the horizontal gaze nystagmus test as it pertains to the issues of probable cause to arrest and whether the driver was operating a vehicle while under the influence of alcohol." Id., syllabus. However, results of the test are only admissible if "the proper foundation has been shown both as to the officer's training and ability to administer the test and as to the actual technique used by the officer in administering the test." Id. at 128.
In the instant case, Trooper Wright did not provide any information pertaining to either of these two foundational requirements. Without testimony as to whether Wright had received training in the administration of HGN tests, and information about the actual techniques used in evaluating appellant's performance at the time in question, there was no foundation for the introduction of the HGN test results.
The trial court's questioning of Wright was not an abuse of discretion. A trial court has discretion to ask "questions of the participants and the witnesses in the search for truth." Mentoron the Lake v. Giffin (1995), 105 Ohio App.3d 441, 448. However, the trial court's questioning did not cure the foundational defects underlying the testimony. Without an adequate foundation, the admission of the HGN test results was error.
However, error in the admission of evidence in criminal proceedings is harmless if there is no reasonable possibility that the failure to exclude the evidence may have contributed to the accused's conviction. State v. Sibert (1994), 98 Ohio App.3d 412,428-429. Reviewing courts may declare errors to be harmless when the error is harmless beyond a reasonable doubt. Id., at 429. In examining the record to determine this issue, we may give weight to the fact that the error occurred in a trial to the court, rather than in a jury trial. State v. Eubank (1979),60 Ohio St.2d 183, 187.
This brings us to appellant's first assignment of error wherein appellant argues that there was no substantial evidence, by which the trial court could reasonably have concluded that all the elements of the offense were proven beyond a reasonable doubt.
Specifically, appellant argues that appellee failed to prove that appellant operated a motor vehicle with faculties appreciably impaired by alcohol consumption. Appellant notes that he was not told he was not permitted to stop during the walk-and-turn test, and that although Trooper Wright had been instructed to perform the HGN test twice in each eye, he had only performed the test once in each of appellant's eyes. Appellant also claims that the traffic passing by on the interstate could have effected his performance on the sobriety tests, and that Trooper Wright's testimony about appellant's appearance was refuted by appellant's two witnesses.
In determining whether a verdict is against the manifest weight of the evidence, a court of appeals must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380,387. "Weight of the evidence concerns `the inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id.
(Emphasis sic.). In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial. Id. at 390, (Cook, J., concurring). In addition, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Even in the absence of the inadmissible HGN test testimony, we believe there was substantial evidence from which the trial judge could have concluded beyond a reasonable doubt that appellant was operating a motor vehicle while under the influence of alcohol. Trooper Wright observed appellant's vehicle traveling at an excessive rate of speed, and partly on the berm of the road during the early hours of the morning. Appellant had difficulty retrieving his driver's license and registration, and upon inspection had a strong odor of alcohol on his breath. Wright stated that appellant's speech was "mushy" and his eyes were glassy and red. According to Wright, appellant performed poorly on both the walk-and-turn test and the balance test.
Although appellant claims he was not properly instructed on the walk-and-turn test, he failed to introduce any evidence at trial that the failure of Trooper Wright to inform him that he could not stop during the test affected the reliability of the test result. Nor did appellant introduce evidence of the standard procedure for conducting the test. See State v. Homan (May 14, 1999), Erie App No. E-97-100, unreported (results of walk-and-turn test held inadmissible at trial where defendant produced evidence that test was not conducted in accordance with standardized methods and procedures which compromised validity of test).
In addition, appellant conceded that he had spent the night at a drinking establishment and had consumed three beers. The trial court was entitled to discount this testimony, particularly as Cope admitted that she was unable to account for any drinks that may have been purchased for appellant by other patrons in the bar. Even assuming the truth of appellant's testimony, the trial court could reasonably have found that the consumption of three beers was enough to impair appellant's ability to operate a motor vehicle.
Accordingly, the evidence at trial was more than adequate to support the trial court's verdict. Although the testimony relating to appellant's performance on the HGN test was inadmissible for lack of an evidentiary foundation, the admission of said evidence did not result in prejudice to appellant but was harmless error given the substantial evidence of appellant's impairment. As such, we do not find appellant's conviction to be against the manifest weight of the evidence.
Appellant's two assignments of error are without merit and the judgment of the trial court is hereby affirmed.
COX, J., and WAITE, J., concurs.
APPROVED:
 ____________________ GENE DONOFRIO Judge