DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant Gary L. Johnson, Jr., appeals his conviction for leaving the scene of an accident and operating a motor vehicle without a license. Appellant argues that the trial court erred when it denied his Crim.R. 29(A) motion for acquittal because the City failed to prove, beyond a reasonable doubt, that he operated the motor vehicle involved in the accident. Because we find that the City failed to proffer sufficient operative facts to convince the average mind of Appellant's guilt beyond a reasonable doubt, we reluctantly agree. Accordingly, we reverse the trial court's judgment and remand this cause with instructions to discharge this defendant.
 I. {¶ 2} The City charged Appellant with one count of leaving the scene of an accident in violation of Chillicothe Revised Ordinance Section 335.12, and driving under a suspended license in violation of Chillicothe Revised Ordinance 335.07. Appellant pled not guilty and the case proceeded to a jury trial.
 {¶ 3} At trial, the City argued that Appellant, after arguing with a girlfriend, crashed his car into a parked vehicle on East Fourth Street, and left the scene of the accident. Appellant stipulated that his driver's license was suspended at the time of the accident.
 {¶ 4} Amanda Blevins, Appellant's friend, testified that on the night of the accident she did not argue with Appellant, but with another man. She also testified that she drove Appellant's vehicle on the night of the accident. According to Blevins, two other men, including Travis Downing, were in the car with her and Appellant. After they arrived at her home on East Fourth Street, she went into her home. One of the men with her and Appellant asked her for her keys. While inside her home, she heard the car start and went outside, where she observed the car driving away. Blevins admitted that she could not see who was driving the car.
 {¶ 5} Blevins testified that she spoke with Sgt. Cunningham that evening, but claimed she never told him she argued with Appellant that evening. She also stated that she never told Sgt. Cunningham that Appellant threw her out of the vehicle and drove away. Blevins did admit that Appellant is her friend. The City never moved the trial court to declare Blevins a hostile witness.
 {¶ 6} Anthony Scott, a resident of East Fourth Street, testified that he witnessed the accident. According to Scott, he heard a couple, unrelated to this case, arguing outside. He went to his second-floor window to observe the argument and saw a car stop and drop someone off. However, throughout his testimony, Scott never conclusively stated whether the car dropped off one person or several people, or whether the person exiting the vehicle was a man or a woman. He used the terms "her," "him," and "they" interchangeably when describing the drop-off.
 {¶ 7} After one or more people exited the car, the driver pulled away, but then came back to East Fourth Street. The car stopped in between his home and his neighbor's home. The car then reversed and hit his neighbor's car. Scott ran outside of his home to catch the driver, but the car drove away before he came outside. From his window, he observed only one person in the car. Scott claimed that he saw the impact of the accident and described the car. On cross-examination, Scott testified that he did not remember telling a police officer that he heard a "loud bang" and then looked out his window. Instead, Scott said he was already at his window to get some fresh air when the accident occurred.
 {¶ 8} Rebecca Jenkins, the owner of the vehicle damaged in the accident, testified that she parked her car in front of her home on the evening of the accident. Jenkins stated that her car was undamaged when she left it. The damage to the vehicle was on the left quarter panel, fender, and headlights. She did not observe the accident, but Scott informed her of it. Finally, Jenkins testified that she lived in the same duplex as Scott and admitted that the second-floor window in that home provides a good observational standpoint for the street below.
 {¶ 9} Officer Randy Pratt testified that he investigated the accident. Officer Pratt testified that he spoke with Anthony Scott during his investigation. On cross-examination, he stated that Scott told him that he heard a loud bang and then looked out his window and saw a green car parked against a parked vehicle. Scott told him he observed only one person in the vehicle. Officer Pratt admitted that his accident report described the street conditions as dark and without lights. He then testified that despite the darkness, a witness could observe the color and location of the vehicle from Scott's second-floor window. However, Officer Pratt admitted that he never went into Scott's home to look out from the window.
 {¶ 10} Officer Pratt also testified that he obtained the vehicles license plate number from Scott. However, he later testified that he could not remember if he obtained the license number from Scott or Jenkins, or from another officer who spoke with Blevins.
 {¶ 11} Finally, Officer Pratt testified to his interview with Appellant. The interview took place approximately two days after the accident. Appellant told him that he was out with Blevins on the night in question, but maintained that he never drove his vehicle. Appellant admitted that he argued with Blevins on East Fourth Street and wanted to leave. He saw a friend from West Virginia, James Rose, walking on East Fourth Street. Appellant asked Rose if he had a driver's license. After verifying that Rose had a license, Appellant asked him to drive him home. They left East Fourth Street, with Rose driving. Appellant denied being involved in an accident when Rose drove him home. Finally, Appellant told Officer Pratt that he did not know how to contact Rose to verify his version of events.
 {¶ 12} Christopher A. Clark, a road deputy with the Ross County Sheriff's Department, also testified. Clark assisted in the investigation by making contact with Appellant on the night of the accident. He went to Appellant's residence and observed damage to Appellant's vehicle. He knocked on Appellant's door several times, but nobody answered. Clark then looked through a window and observed Appellant lying on the bathroom floor. Eventually, Appellant answered the door.
 {¶ 13} Clark testified that Appellant appeared intoxicated and that a strong odor of alcohol emanated from Appellant's person. Clark also testified that Appellant was the only person in the residence, which was small. However, on cross, Clark admitted that he did not check the entire residence.
 {¶ 14} Travis Downing testified for the defense. Downing stated that he was with Appellant and Amanda Blevins on the night of the accident. Earlier in the evening, Amanda drove them, in Appellant's car, to her friend's home on East Fourth Street. They stayed at the friend's home for approximately three hours. As they left the home, they saw James Rose get out of a red truck. Rose then drove them away from East Fourth Street. Downing testified that he never saw Appellant drive the vehicle that evening.
 {¶ 15} At the close of all evidence, Appellant made a Crim.R. 29(A) motion for acquittal. The trial court denied the motion and the case went to the jury, which returned with a guilty verdict.
 {¶ 16} Appellant appeals and asserts the following assignments of error:
 {¶ 17} "I. THE COURT BELOW ERRED IN OVERRULING DEFENDANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29."
 {¶ 18} "II. THE JURY'S VERDICTS WERE IMPROPER AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 II. {¶ 19} The City of Chillicothe Revised Ordinance Section335.12(a) provides, in pertinent part: "In case of accident to or collision with persons or property upon any of the public roads or highways, due to the driving or operation thereon of any motor vehicle, the person driving or operating the motor vehicle,
having knowledge of the accident or collision, immediately shall stop the driver's or operator's motor vehicle at the scene of the accident or collision and shall remain at the scene of the accident or collision until the driver or operator has given the driver's or operator's name and address and, if the driver or operator is not the owner, the name and address of the owner of that motor vehicle, together with the registered number of that motor attended of any motor vehicle damaged in the accident or collision, or to any police officer at the scene of the accident or collision."
 {¶ 20} Chillicothe Revised Ordinance Section 335.12(a) then goes on to state: "If the accident or collision is with an unoccupied or unattended motor vehicle, the operator who collides with the motor vehicle shall securely attach the information required to be give in this section, in writing, to a conspicuous place in or on the unoccupied or unattended motor vehicle." Section 335.12(b) provides that a violation of Section 335.12(a) is a first-degree misdemeanor, or a felony if the violation results in "serious physical harm or death to a person * * *."
 {¶ 21} Chillicothe Revised Ordinance Section 335.07(a) provides: "No person whose driver's or commercial driver's license or permit or nonresident operating privilege has been suspended under any provision of the Ohio Revised Code, other than Ohio R.C. Chapter 4509, or under any applicable law in any other jurisdiction in which the person's license or permit was issued shall operate any motor vehicle upon the public roads and highways or upon any public or private property used by the public for purposes of vehicular travel or parking within this Municipality during the period of suspension unless the person is granted limited driving privileges and is operating the vehicle in accordance with the terms of the limited driving privileges." Section 335.07(c)(1) provides that a violation of Section335.07(a) is a first-degree misdemeanor.
 A. {¶ 22} In his first assignment of error, Appellant argues that the trial court erred when it denied his Crim.R. 29(A) motion for acquittal. Specifically, Appellant contends that the City failed to proffer sufficient evidence to convince the average mind, beyond a reasonable doubt, that he operated the motor vehicle in question. The City argues that it presented sufficient circumstantial evidence to defeat a motion for acquittal.
 {¶ 23} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 24} When reviewing the sufficiency of the evidence, we examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, at paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia
(1979), 443 U.S. 307. This test involves a question of law and does not permit us to weigh the evidence. State v. Martin
(1983), 20 Ohio App.3d 172, 175. A Crim.R. 29(A) motion should only be granted when the evidence presented is such that any rational trier of fact must have a reasonable doubt as to the defendant's guilt. State v. Sibert (1994), 98 Ohio App.3d 412,433, citing State v. Bridgeman (1978), 55 Ohio St.2d 261, 264.
 {¶ 25} Circumstantial and direct evidence possess the same probative value and are subject to the same standard of proof.State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph one of the syllabus.
 {¶ 26} Here, the City failed to provide any direct evidence that Appellant operated the motor vehicle involved in the accident. Instead, it attempted to prove its case through circumstantial evidence by showing that: (1) Appellant owned the motor vehicle and (2) a witness saw only one person driving the motor vehicle at the time of the accident. However, Appellant's ownership, alone, fails to prove that he operated the motor vehicle. The witness, Anthony Scott, could not testify that he saw Appellant actually operating the vehicle. Instead, he testified that he saw only one person in the vehicle and the City used this testimony to create a presumption that the driver must have been the vehicle's owner. This inference is improper. The primary operators of motor vehicles are often not the actual owners. For example, a wife may actually own a vehicle that her husband primarily operates.
 {¶ 27} While it was within the jury's province to find Appellant's statements to Officer Pratt non-credible, those statements cannot overcome the City's failure to proffer actual evidence that Appellant operated the motor vehicle. In short, to sustain a conviction, the City was required to produce some evidence that Appellant operated the vehicle. See, generally,City of Cleveland v. Coleman (1955), 127 N.E.2d 420, 421.
 {¶ 28} Without any proof that Appellant operated the motor vehicle involved in the accident, the City failed to proffer sufficient evidence to convince the average mind of Appellant's guilt beyond a reasonable doubt. Accordingly, the trial court erred when it denied Appellant's Crim.R. 29(A) motion for acquittal, and we sustain the first assignment of error.
 B. {¶ 29} In his second assignment of error, Appellant argues that his conviction is not supported by the manifest weight of the evidence. Because of the disposition of Appellant's first assignment of error we find his second assignment of error now moot. See App.R. 12(4)(1)(c).
 {¶ 30} Therefore, we reluctantly find the evidence admitted at trial would not convince the average mind of this defendant's guilt beyond a reasonable doubt. Accordingly, we reverse the trial court's judgment and remand this cause with instructions to discharge this defendant.
JUDGMENT REVERSED AND CAUSE REMANDED.