DECISION AND JUDGMENT ENTRY
Randy Jones appeals his conviction for engaging in a pattern of corrupt activity, a violation of R.C. 2923.32, entered by the Scioto County Court of Common Pleas. He asserts that he was not tried by a fair and impartial jury, because a member of the jury was employed by the county probation department. Because we find that such employment does not render a potential juror presumptively biased against criminal defendants, we disagree. Jones next argues that the trial court should have granted him a new trial because of juror misconduct. We disagree, because there is no evidence aliunde impeaching the jury's verdict. Jones also argues that he should have been given a copy of a witness's Grand Jury testimony because that witness was permitted to refresh his memory with it. We disagree, because the trial court did not abuse its discretion in deciding not to disclose Grand Jury testimony. Jones also argues that the trial court erred in allowing a witness to keep a transcript of his Grand Jury testimony overnight. We disagree, because Jones failed to allege any prejudice suffered because the witness kept the transcript. Jones next asserts that the trial court erred by failing to sanction the state for providing similar transcripts to other witnesses. We disagree, because Jones again failed to allege any prejudice he suffered as a result of the trial court's inaction. Jones also asserts that the trial court erred by allowing testimony about events that took place after he was indicted, and by not granting a mistrial for the same reason. Because we find that the testimony was relevant and that the trial court did not abuse its discretion in denying the motion for a mistrial, we disagree. Jones next argues that the trial court erred by allowing a non-conspirator to testify about what a conspirator told her. Because we find that the witness need not be a co-conspirator for the co-conspirator exception to the rule against hearsay to apply, we disagree. Jones also asserts that the trial court should have declared a mistrial because the state updated one of its witnesses about each day's testimony even though the trial court had ordered a separation of witnesses. Because we find that the trial court did not abuse its discretion in denying the motion for a mistrial, we disagree. Next, Jones argues that the trial court erred by allowing phone records and evidence relating to growing marijuana. Because we find that the trial court did not abuse its discretion in allowing in the relevant evidence, we disagree. Finally, Jones argues that the trial court erred in instructing the jury. We disagree because we find that the trial court did not abuse its discretion by using the statutory definition of an "enterprise," because Jones failed to object to the remainder of the jury instructions at trial, and because we find no plain error. Accordingly, we affirm the judgment of the trial court.
 I.
In 1996, Chad Burchett and Jimmy Sherburn decided to obtain large amounts of marijuana in Texas and transport them to Portsmouth, Ohio for resale. Chad Burchett's sister, Christy Burchett, helped the men obtain the marijuana in Texas. At first, the men brought the marijuana for processing and repacking to Randy Jones' home. The men sold the marijuana to Randy Jones, who in turn sold most of it to Jerry Cook, who then sold the marijuana to street-level dealers. Randy Jones kept some of the marijuana and sold it to Dennis Rogers, who then resold it in smaller amounts. After a few trips from Texas to Ohio, Chad Burchett and Jimmy Sherburn cut Christy Burchett out of the organization. Eventually Jerry Cook convinced Chad Burchett and Jimmy Sherburn to sell the marijuana directly to him, bypassing Randy Jones. After Chad Burchett and Jimmy Sherburn agreed, Jerry Cook began to sell marijuana to Randy Jones and others, who would then resell it.
After losing their places in the organization, Christy Burchett and Randy Jones began to transport large amounts of marijuana from Texas to Portsmouth, Ohio.
Rick Hall grew his own marijuana from seeds purchased in Amsterdam. Chad Burchett and Jimmy Sherburn traded three pounds of their marijuana for one pound of Hall's marijuana. Jerry Cook also purchased and sold Hall's marijuana.
Eventually the authorities discovered a large shipment of marijuana while in transport through Tennessee. At that time, the federal Drug Enforcement Agency ("DEA") began to investigate Chad Burchett and Jimmy Sherburn. At the behest of a DEA Agent, Chad Burchett gave an interview to the Southern Ohio Law Enforcement Drug Task Force. After an investigation, the Grand Jury indicted Jerry Cook, Rick Hall, R. William "Billy" Wright, Dennis Rogers, Ricky Potter, David Cullen, and Jimmy Sherburn for violations of R.C. 2923.32, engaging in a pattern of corrupt activity. The indictment alleged that the defendants and unindicted co-conspirators associated with a criminal narcotics enterprise by cultivating, possessing, purchasing, transporting and distributing marijuana, and participated in a pattern of corrupt activity. The indictment also alleged twenty predicate acts.
All of the members of the alleged enterprise testified against Cullen, Jones, and Rogers. The charge against Cullen was dismissed during the trial. The jury found Jones and Rogers guilty. Seven days later, they moved for a new trial alleging jury misconduct. They attached affidavits from two jurors who alleged that they were "not given an opportunity to freely discuss [their] opinions and that [they were] pressured into signing the verdict form[s] against [their] beliefs, [their] knowledge and [their] opinions." The trial court denied the motions. Jones appeals, asserting the following errors:
 I. The court did commit error by overruling the challenge for cause seating juror Tammie Cole.
 II. The court did commit error by not having a fair and impartial jury for the accused.
 III. The court did commit error by denying a motion for a mistrial (without findings of fact and conclusions of law) when the inappropriate jury activity was brought to the attention of the court. This effectively allowed one of the jurors who had engaged in jury misconduct by intimidation [to] change the verdict.
 IV. The court did commit error by allowing prosecutorial misconduct in providing witnesses with a transcript of their Grand Jury testimony.
 V. The court did commit error prejudicial to the defendant by allowing witness to keep Grand Jury testimony overnight to do whatever.
 VI. The court did commit error by not acting after learning in testimony other witnesses had also been given copies of the Grand Jury [t]estimony while keeping it from the defense.
 VII. The court did commit error by overruling motion for mistrial when the witnesses were given transcripts of Grand Jury [t]estimony without authority of court.
 VIII. The court did commit error by overruling a motion for a mistrial on the basis prejudicial testimony was allowed in the case that happened after the Grand Jury was dismissed.
 IX. The court did commit error by allowing a non-conspirator testify about what a conspirator told her.
 X. In two separate incidents the court did commit error by overruling motion for mistrial after discovering witness that was subject to separation of witnesses was being briefed daily by the prosecutor as to the testimony given each day.
 XI. The court did commit error by admitting all evidence over the objections of defense on sound basis and admitted without findings of fact and conclusions of law.
 XII. The [j]ury instructions were very confusing and prejudicial.
 II.
In his first two assignments of error, Jones argues that the trial court erred by overruling his challenge for cause of potential juror Tammie Cole. Jones argues that he did not receive a fair and impartial jury because Cole became a member of the jury.
At the time of trial, Cole was employed by the Scioto County Probation Department. She previously had worked for Scioto County Court of Common Pleas Judge Lytten. Jones argues that Crim.R. 24 (B) (11) and 24 (B) (12) required the trial court to dismiss Tammie Cole. We previously have held that neither the Revised Code nor the Rules of Criminal Procedure permit a trial court to presume that an employee of a court or correctional institution would be a biased juror. State v. Saunders (Dec. 1, 1993), Ross App. No. 1896, unreported, citing State v. McKinney (1992),80 Ohio App.3d 470. Furthermore, a state employee is not automatically disqualified from serving as a juror in a criminal case where the state is a party. Saunders, supra. An employee of a county probation department is very similar to employees of a court or correctional institutions. Therefore, we hold that an employee of a county probation department is not presumed to be biased as a juror and may not be challenged for cause in a criminal case on the basis of Crim.R. 24 (B) (11) or 24 (B) (12). Tammie Cole assured the court that she would be a fair and impartial juror. Accordingly, we find that the trial court did not err in failing to sustain Jones' challenge for cause regarding potential juror Tammie Cole and, therefore, did not fail to impanel a fair and impartial jury. We overrule Jones' first and second assignments of error.
 III.
In his third assignment of error, Jones argues that the trial court erred in failing to grant him a new trial because of jury misconduct.
Whether to grant or deny a motion for new trial is committed to the sound discretion of the trial court. State v. Matthews
(1998), 81 Ohio St.3d 375, citing State v. Schiebel (1990),55 Ohio St.3d 71, paragraph one of the syllabus. We will not reverse a trial court's denial of a motion for new trial absent an abuse of that discretion. Shark v. Norfolk W. Ry. Co. (1995), 72 Ohio St.3d 307. An abuse of discretion implies that a court's ruling is unreasonable, arbitrary, or unconscionable; it is more than an error in judgment. State ex rel. Richard v. Seidner (1996),76 Ohio St.3d 149.
After his conviction, Jones obtained two affidavits from jurors who stated that they were not able to freely express their opinions and that they were "pressured and coerced into signing [guilty] verdict forms." Both jurors also stated that in their minds "there was not enough evidence to convince her of the guilt of Randy Jones * * * beyond a reasonable doubt."
"It is a longstanding rule that `the verdict of a jury may not be impeached by the evidence of a member of the jury unless foundation for the introduction of such evidence is first laid by competent evidence aliunde, i.e., by evidence from some other source.'" State v. Reiner (2000), 89 Ohio St.3d 343, 349, citingState v. Adams (1943), 141 Ohio St. 423. Ohio has adopted this rule in Evid.R. 606 (B), which provides:
 Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes.
In this case, Jones failed to lay a foundation for the introduction of the affidavits. There is no evidence from some other source. Therefore, the trial court could not consider the affidavits and did not act unreasonably, arbitrarily, or unconscionably in overruling Jones' motion for a new trial. Accordingly, we find that the trial court did not err in overruling Jones' motion, and we overrule his third assignment of error.
 IV.
In his fourth assignment of error, although Jones phrases his assignment of error in terms of "prosecutorial misconduct," he actually argues that the trial court erred in failing to give him a copy of Chad Burchett's grand jury testimony because Chad Burchett used it to refresh his memory prior to trial.
An accused is not entitled to see grand jury transcripts unless the ends of justice require it and the accused shows that "a particularized need for disclosure exists which outweighs the need for secrecy." State v. Greer (1981), 66 Ohio St.2d 139, paragraph two of the syllabus; see, also, State v. Benge (1996),75 Ohio St.3d 136, 145; State v. Webb (1994), 70 Ohio St.3d 325,337. Such a need exists "`when the circumstances reveal a probability that the failure to provide the grand jury testimony will deny the defendant a fair trial.'" State v. Davis (1988),38 Ohio St.3d 361, 364-365, quoting State v. Sellards (1985),17 Ohio St.3d 169, 173. Determining whether there exists a particularized need is a matter within the trial court's discretion. Greer at 148.
In this case, the trial court found no particularized need. Jones has not sustained his burden of showing that nondisclosure of the grand jury testimony deprived him of a fair trial. The trial court reviewed Chad Burchett's Grand Jury testimony for inconsistencies with his testimony at trial and so informed the defense. Since we find that the trial court did not abuse its discretion, we overrule Jones' fourth assignment of error.
 V.
In his fifth assignment of error, Jones argues that the trial court erred in allowing Chad Burchett to keep the transcript of his Grand Jury testimony overnight. However, Jones fails to allege any prejudice he suffered because Chad Burchett kept the transcript. Even assuming that the trial court erred in allowing Chad Burchett to keep the transcript, we find it harmless beyond a reasonable doubt. See, Crim.R. 52; State v. Sibert (1994),98 Ohio App.3d 412 (appellant has the burden to establish that any error is prejudicial) Accordingly, we overrule Jones' fifth assignment of error.
 VI.
In his sixth and seventh assignments of error, Jones asserts that the trial court erred by not sanctioning the state for providing transcripts of Grand Jury testimony to witnesses other than Chad Burchett. Jones argues that the trial court should have given a copy of the testimony to him or granted a mistrial. However, Jones again fails to identify how the prosecutor giving witnesses a copy of their own Grand Jury testimony prejudiced him. Accordingly, we find that the error, if any, was harmless beyond a reasonable doubt. Crim.R. 52; Sibert. Thus, we overrule Jones' sixth and seventh assignments of error.
 VII.
In his eighth assignment of error, Jones argues that the trial court erred by allowing testimony about actions that occurred after January of 1998. The indictment alleged that the corrupt activity took place until January of 1998. At trial, Jones argued that the evidence of "drug busts" in 1998 tainted the jury, and asked for a mistrial.
The granting or denying of a mistrial rests within the sound discretion of the trial court. State v. Garner (1995), 74 Ohio St.3d 49,59; State v. Glover (1988), 35 Ohio St.3d 18. Moreover, a mistrial is necessary only when the ends of justice so require and a fair trial is no longer possible. Garner at 59; State v.Franklin (1991), 62 Ohio St.3d 118, 127. An abuse of discretion is more than an error in judgment; it implies that a trial court's ruling is "unreasonable, arbitrary, or unconscionable."Seidner, supra, citing State v. Adams (1980), 62 Ohio St.2d 151,157. When applying the abuse of discretion standard of review, we are not free to merely substitute our judgment for that of the trial court. Duncan v. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728; In re Jane Doe 1 (1991), 57 Ohio St.3d 135.
Relevant evidence is admissible. Evid.R. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Evidence of the enterprise, which continued after the indictment date, has a tendency to make the existence of the enterprise and its participants more probable. The nature of the enterprise and its participants were essential to the state's case and thus, facts of consequence to the action. See, State v. Walton (1990), 908 F.2d 1289 (evidence of defendant's continued participation in the conspiracy after the date of the indictment does not violate Fed.R.Evid. 404 (b) (other crimes) or Fed.R.Evid. 403 (prejudice versus probative value) because jury could infer from evidence that defendant was involved with conspiracy at times stated in indictment) Moreover, Jones has failed to demonstrate how the ends of justice required the trial court to grant his motion for a mistrial or that a fair trial was no longer possible. Accordingly, we find that the trial court did not abuse its discretion in failing to grant a mistrial. We overrule his eighth assignment of error.
 VIII.
In his ninth assignment of error Jones asserts that the trial court erred in allowing a non-conspirator to testify about what a member of the conspiracy told her. Jones argues that the trial court should not have permitted Patricia Patterson to testify about Jerry Cook's verbal identification of the initials placed in a book used by Jerry Cook to keep track of the drugs he fronted to his dealers.
Generally, the admission or exclusion of relevant evidence rests within the sound discretion of the trial court and its decision to admit or exclude such evidence will not be disturbed absent an abuse of that discretion. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of syllabus; State v. Reed (1996),110 Ohio App.3d 749, 752. However, this issue deals with the question of whether certain statements admitted by the trial court were hearsay. While the trial court has discretion to admit or exclude relevant evidence, it has no discretion to admit hearsay. Evid.R. 802 mandates the exclusion of hearsay unless an exception applies. Smith v. Seitz (July 9, 1998), Vinton App. No. 97CA515, unreported. Thus, we review de novo the trial court's decision regarding whether a statement is hearsay or non-hearsay under Evid.R. 801. Id.; see, also, State v. Sorrels (1991), 71 Ohio App.3d 162,165.
Under Evid.R. 801 (D) (2), hearsay does not include a statement offered against a party that is made "by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy." A statement of a co-conspirator is not admissible pursuant to Evid.R. 801 (D)(2)(e) until the proponent of the statement has made a prima facie showing of the existence of the conspiracy by independent proof.State v. Carter (1995), 72 Ohio St.3d 545, paragraph three of the syllabus.
Jones argues that the witness testifying to the statement must be a member of the conspiracy. While the declarant and the defendant must be co-conspirators, there is no requirement that the witness and the declarant be co-conspirators. See, e.g.,State v. Lindsey (2000), 87 Ohio St.3d 479, 480 (witness' repetition of statements by Hoop, defendant Lindsey's co-conspirator, made during the course and in furtherance of the conspiracy was not hearsay). Thus, Patterson's testimony was not hearsay, and the trial court did not err in allowing her testimony about Jerry Cook's statements. Accordingly, we overrule Jones' ninth assignment of error.
 IX.
In his tenth assignment of error, Jones argues that the trial court should have declared a mistrial because state's witness Todd Bryant testified that the prosecutor advised him of each day's testimony throughout the trial even though the trial court had ordered a separation of witnesses pursuant to Evid.R. 615.
As we explained above, the granting or denying of a mistrial rests within the sound discretion of the trial court. Evid.R. 615 provides in part:
 At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses * * *. This rule does not authorize the exclusion of * * * a party who is a natural person * * *.
To the extent the appellant relies on Evid.R. 615 to establish error on the trial court's part, the reliance is misplaced. The plain language of the rule requires exclusion only so that the witnesses cannot hear testimony of other witnesses. State v.Barney (June 7, 1999), Meigs App. No. 97CA12, unreported. The court's refusal to enforce a separation of witnesses beyond that was within its sound discretion. See Oakwood v. Makar (1983),11 Ohio App.3d 46, 48.
In this case, we see no abuse of discretion in the trial court not granting a mistrial because the prosecutor updated Todd Bryant on the progress of the trial and alerted him of a possible mistake in his testimony. Bryant was not present in the courtroom to hear the testimony of the other witnesses. If he altered his testimony to conform with the reports of the other witnesses' testimony by the prosecutor, as Jones alleges, Jones had the opportunity to cross-examine Bryant on that issue. Accordingly, we overrule Jones' tenth assignment of error.
 X.
In his eleventh assignment of error, Jones' argues that the trial court "did commit prejudicial error by admitting all evidence over sound objections of defense * * *." Jones complains about the trial court's admission of the phone records, marijuana and drug paraphernalia seized from the grow operation.
 A.
Jones seems to allege that the phone records were not relevant and did not prove that any criminal activity took place. Jones asserts that the trial court should not have admitted the evidence because there was no way of knowing who made the calls, who received the calls, or the content of the calls. However, Jones was free to argue these points to the jury.
Relevant evidence is admissible. Evid.R. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. The fact that telephones listed with members of the enterprise received calls from and made calls to telephones listed to other members of the enterprise makes the existence of the enterprise more probable than it would be without any evidence that the members called each other. Thus, the phone records are relevant.
 B.
Jones also asserts that the evidence of Hall's "grow operation" was not relevant to his guilt. However, Jones was charged with being part of a criminal enterprise, which included the "grow operation." Thus, evidence of the "grow operation" was relevant to the existence and scope of the enterprise itself. Since the existence of the enterprise is a fact of consequence to the case, the evidence of the "grow operation" was relevant evidence. Jones was free to argue that he had no knowledge of the "grow operation.
 C.
Since both the phone records and the evidence from the "grow operation" were relevant, we find no abuse of discretion on the part of the trial court in admitting them. Accordingly, we overrule Jones' eleventh assignment of error.
 XI.
In his twelfth assignment of error, Jones argues that the trial court erred in instructing the jury. At trial, the only jury instruction Jones objected to was the trial court's definition of an "enterprise."
A trial court has broad discretion in deciding how to fashion jury instructions. State v. Weston (July 16, 1999), Washington App. No. 97CA31, unreported; State v. Blair (Dec. 4, 1997), Meigs App. No. 96CA27, unreported. "A party may not assign as error the giving or the failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection." Crim.R. 30 (A). A defendant who fails to object to jury instructions before the jury retires to deliberate waives any error in the jury instructions. State v. Williford (1990),49 Ohio St.3d 247, citing State v. Lane (1976), 49 Ohio St.2d 77, paragraph one of the syllabus.
Although a defendant may have failed to raise a timely objection to an error affecting a substantial right, courts may notice the error. Crim.R. 52 (B). "Notice of plain error under Crim.R. 52 (B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum (1990), 53 Ohio St.3d 107,111. The plain error rule should not be invoked unless, but for the error, the outcome of the trial would clearly have been otherwise. See State v. Underwood (1983), 3 Ohio St.3d 12. We may invoke the plain error rule only if we find: (1) the jury instructions denied the appellant a fair trial; (2) the circumstances in the instant case are exceptional; and (3) reversal of the judgment below is required to prevent a manifest miscarriage of justice.
Jones argues that the trial court's instruction on the definition of an "enterprise" is nebulous. He asserts that it is impossible to determine what an enterprise is from the definition, and that the definition "does not exist" in the Revised Code. However, the trial court used the definition of enterprise from R.C. 2923.31 (C). Thus, the definition of enterprise is legally correct. Furthermore, we find that the trial court did not abuse its discretion in reading the definition of "enterprise" from R.C. 2923.31.
Jones next argues that the trial court erred in instructing the jury on the definition of a "pattern of corrupt activity" and stating that the jury was "not permitted to change the law nor apply [their] conception of what [they] think the law should be." Jones did not object to either of these instructions. To the contrary, his proposed instructions contained the second disputed instruction in its entirety. The trial court quoted and paraphrased from R.C. 2923.31 (E) its definition of a "pattern of corrupt activity." We cannot find that the jury instructions denied Jones a fair trial or that we must reverse Jones' conviction to prevent a manifest miscarriage of justice. Thus, we find no plain error in the remaining jury instructions. Accordingly, we overrule Jones' twelfth assignment of error.
 XII.
In sum, we overrule all of Jones' assignments of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty-day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Evans, J.: Concurs in Judgment and Opinion. Harsha, J.: Concurs in Judgment Only.
________________________________ Roger L. Kline, Presiding Judge