JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Stanley Braxton, appeals his conviction, sexual predator classification, and subsequent sentence imposed. After a thorough review of the arguments presented and for the reasons set forth below, we affirm appellant's conviction and classification, vacate his sentence and remand for resentencing.
 {¶ 2} On April 2, 2004, the Cuyahoga County Grand Jury filed a 30-count indictment against appellant. The first 21 counts pertained to minor-victim A.M.,[1] and charged appellant with 17 counts of rape, in violation of R.C. 2907.02, and four counts of kidnapping, in violation of R.C. 2905.01. The remaining nine counts pertained to minor-victim, J.M. (A.M.'s sister) and charged appellant with three counts of rape, in violation of R.C.2907.02, three counts of kidnapping, in violation of R.C.2905.01, and three counts of gross sexual imposition, in violation of R.C. 2907.05. Several of the charges contained sexually violent predator specifications, in violation of R.C.2971.01(I).
 {¶ 3} This indictment stems from multiple incidents of sexual assault by appellant against the two minor-aged victims while appellant was dating the victims' maternal aunt, Malisa Doaty ("Doaty"). The record reflects the facts and circumstances of those incidents as follows:
 {¶ 4} A.M. and J.M. were adopted by Doaty at a very young age because their mother was unable to care for them. The two sisters lived with Doaty on the second floor of a duplex in Cleveland, along with their brother and cousin, and their grandmother resided on the first floor. Doaty met appellant where they worked together, and they began dating. Appellant eventually began visiting at Doaty's home on a regular basis. He had a key to the home and was frequently around the children, watching them and providing transportation for them at times.
 {¶ 5} A.M., the older of the two sisters, testified that about a month after meeting appellant through her aunt, disturbing incidents began to happen. These incidents included times when appellant would go into her room and the bathroom while she was undressed and stare at her; however, no physical contact occurred at this point.
 {¶ 6} A.M. then testified to the time appellant first raped her. In early 2002, appellant was helping Doaty redecorate her home. On March 7, 2002, television cable service was scheduled to be installed in the home, and appellant was there to sign for the service on behalf of Doaty. That day, A.M. was ill and stayed home from school. A.M.'s school records confirm that she was absent from school that day. Early that day, while A.M. was in the kitchen, appellant tried to touch her breast, and she pushed him away. No one else was in the home at that time. This upset appellant, and he grabbed A.M. by the arm and dragged her into the living room, where he removed her clothes, unzipped his pants, removed his penis, then forced his penis into her mouth. He next put his fingers into her vagina, then he put his penis into her vagina, but withdrew before ejaculating. A.M. resisted throughout, but to no avail. Afterward, appellant threatened to physically harm her if she told anyone of the incident. A.M. was twelve years old at the time of the first assault. She went on to testify to appellant's continual rapes.
 {¶ 7} A.M. eventually became a cheerleader at her high school. Using her schedule from the high school, A.M. was able to determine the final two times she was raped by appellant. On February 13, 2004, appellant picked her up from cheerleading and drove her to a dark parking lot. There he raped her vaginally with his fingers and penis, ejaculating outside of A.M.; seminal fluid got on the front seat of the car. On February 17, 2004, he again picked up A.M. from cheerleading. This time, he drove her home, where he took her into her aunt's room, locked the door, and vaginally raped her with his penis. After he ejaculated, A.M. pulled up her pants and left the room.
 {¶ 8} Later that month, A.M.'s brother and cousin were snooping through her personal effects and came upon a diary. The contents of the diary concerned the boys, and they turned it over to their grandmother, who in turn called the police. Appellant was subsequently arrested, and his car was towed for processing. A.M. was taken to the hospital, where she was examined by Dr. Rebecca Newell. Doaty also took some of A.M.'s underpants and other clothing to the police for scientific testing. No male DNA was initially located in the samples taken from appellant's car seat and A.M.'s clothing, but Y chromosome DNA testing of the samples proved consistent with appellant. Through the Y chromosome DNA testing, the laboratory was 95 percent confident that 99 percent of the population could be excluded as having the same profile as seen in the samples taken from the car and clothing and from appellant.
 {¶ 9} Prior to trial, the sexually violent predator specifications were bifurcated. A jury trial commenced on May 23, 2005, and at the close of the state's case-in-chief, the trial court granted appellant's motion for acquittal as to counts 23, 24, and 27-30, pertaining to J.M. At the conclusion of the trial, the jury found appellant guilty of two counts of rape and two counts of kidnapping, all pertaining to A.M. Appellant was found not guilty of the remaining counts, and the state dismissed the sexually violent predator specifications.
 {¶ 10} On July 12, 2005, a sexual predator hearing was held, and the trial court found appellant to be a sexual predator. He was sentenced to nine years incarceration on each count, with the counts of kidnapping merging and running concurrently with the rape counts, but the sentences for each rape were ordered to run consecutively for an aggregate term of 18 years. Appellant now appeals, citing five assignments of error.[2]
 Sufficiency and Manifest Weight of the Evidence {¶ 11} In his first assignment of error, appellant contends that the state lacked sufficient evidence for a conviction. A conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31,45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v.Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. However, a judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent, credible evidence which goes to all the essential elements of the case.State v. Trembly (2000), 137 Ohio App.3d 134, 139, citingCohen v. Lamko (1984), 10 Ohio St.3d 167, 462 N.E.2d 407. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443, U.S. 307, 99 S.Ct. 2781,61 L.Ed.2d 560, followed.)" State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus. See, also,State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541.
 {¶ 12} Here, the state provided more than sufficient evidence to sustain appellant's convictions. It offered detailed testimony directly from the victim and provided further evidence corroborating her testimony, such as testimony from Adelphia Cable verifying a service call on March 7, 2002, and school records verifying her absence from school that day. The state also provided further testimonial and physical evidence, including Y chromosome DNA testing that matched appellant. This evidence, viewed in a light most favorable to the prosecution, established every element of the crime for which appellant was convicted. A rational trier of fact could have found the appellant guilty; thus, his convictions were supported by sufficient evidence. Appellant's first assignment of error is without merit.
 {¶ 13} In his second assignment of error, appellant argues that his conviction was against the manifest weight of the evidence. Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squire v. Cityof Cleveland (1948), 150 Ohio St. 303, 345.
 {¶ 14} The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs, supra, in which the court held that unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
 {¶ 15} Upon application of the standards enunciated inTibbs, the court in State v. Martin (1983),20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 16} "There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 17} The weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230. Hence, we must accord due deference to those determinations made by the trier of fact. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. State v.Eley (1978), 56 Ohio St.2d 169.
 {¶ 18} Reviewing the record, it is clear that appellant's convictions were not against the manifest weight of the evidence. The state provided ample testimonial and physical evidence, particularly the testimony of the victim herself. The state called 13 witnesses to testify, and they admitted 52 exhibits. All of this evidence was before the jury, the body that our legal system entrusts as the finder of fact. The testimony of the victim, family members, corroborating witnesses, examining physicians, and investigating officers supports appellant's conviction. Viewing the evidence, we cannot find that the jury lost its way. This assignment of error, therefore, also fails.
 Introduction of Evidence {¶ 19} Appellant challenges the trial court's decision to admit the testimony of Dr. Newell of Rainbow Babies and Children's Hospital. It is well established that, pursuant to Evid.R. 104, the introduction of evidence at trial falls within the sound discretion of the trial court. State v. Heinish
(1990), 50 Ohio St.3d 231; State v. Sibert (1994),98 Ohio App.3d 412. "The admission or exclusion of evidence rests within the sound discretion of the trial court." State v. Jacks
(1989), 63 Ohio App.3d 200, 207. Therefore, "an appellate court which reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion." State v. Finnerty (1989), 45 Ohio St.3d 104,107. An abuse of discretion connotes more than an error in law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. A reviewing court should not substitute its judgment for that of the trial court. See, generally, State v.Jenkins (1984), 15 Ohio St.3d 164. Finnerty, supra, at 107-108.
 {¶ 20} In reviewing the record below, this court cannot say that the lower court abused its discretion on this issue. Appellant argues that the testimony of examining physician Dr. Newell amounted to inadmissible hearsay. Dr. Newell testified that she did not find any physical signs of sexual abuse, but stated that her diagnosis of A.M. reflected sexual abuse. Her diagnosis was based upon the totality of her physical examination of A.M., her perception of A.M.'s demeanor, and A.M.'s recitation of her sexual history. Appellant argues that this amounts to prejudicial hearsay.
 {¶ 21} The Ohio Rules of Evidence define hearsay as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the exceptions enumerated in the rules of evidence. Evid.R. 802.
 {¶ 22} The state contends that the statements at issue fall under one of the exceptions pursuant to Evid.R. 803(4), which states:
 {¶ 23} "(4) Statements for purposes of medical diagnosis ortreatment — Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
 {¶ 24} We find that the testimony at issue does fall within this hearsay exception. Taking Dr. Newell's testimony in its totality, she made it clear that she could not positively determine if A.M. had been sexually abused; she simply stated her diagnosis of A.M. as a qualified physician trained in pediatrics. In making her diagnosis, Dr. Newell indicated that she took all factors into consideration, including the fact that most sexual assaults do not leave physical trauma, and her verbal interaction with A.M. Any statements made by A.M. that were relayed in Dr. Newell's testimony were offered for the purpose of diagnosis or treatment. We find no merit to appellant's third assignment of error.
 Sexual Predator Classification {¶ 25} Appellant next argues that the evidence presented was insufficient to classify him as a sexual predator. A sexual predator is "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C.2950.01(E). In determining whether an offender is a sexual predator, the court should consider all relevant factors including, but not limited to, the offender's age, prior criminal record regarding all offenses and sexual offenses, the age of the victim, previous convictions, number of victims, whether the offender has completed a previous sentence, whether the offender participated in treatment programs for sex offenders, mental illness of the offender, the nature of the sexual conduct, and any additional behavioral characteristics that contribute to the offender's conduct. R.C. 2950.09(B)(2).
 {¶ 26} After reviewing the factors, the court "shall determine by clear and convincing evidence whether the offender is a sexual predator. R.C. 2950.09(B)(3). Clear and convincing evidence is more than a mere preponderance of the evidence; instead, it must produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established."Cincinnati Bar Assoc. v. Massengale (1991), 58 Ohio St.3d 121,122; State v. Hamilton (May 14, 1999), Darke App. No. 1474, quoting In re Brown (1994), 98 Ohio App.3d 337, 342-343. We note, however, that a judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent credible evidence which goes to all the essential elements of the case. Cohen v. Lamko (1984), 10 Ohio St.3d 167.
 {¶ 27} Sexual offender classification hearings under R.C.2950.09 are civil in nature. State v. Gowdy, 88 Ohio St.3d 387,2000-Ohio-355, citing State v. Cook, 83 Ohio St.3d 404,1998-Ohio-291. When conducting a sexual predator hearing, a trial court may rely on information that was not introduced at trial.State v. Thompson (1999), Cuyahoga App. No. 73492. R.C.2950.09(B)(2) does not require that each factor be met, only that they be considered by the trial court. Id. Oral findings relative to these factors should be made on the record at the hearing.State v. Comer, 220 Ohio St.3d 463, 2003-Ohio-4165; State v.Kisseberth, Cuyahoga App. No. 82297, 2003-Ohio-5500.
 {¶ 28} In reviewing a claim of insufficient evidence, this court reviews de novo. State v. Thompkins, supra. Review is limited to whether there is sufficient probative evidence to support the trial court's determination; that is, whether the evidence against the appellant, if believed, would support the determination that he is a sexual predator. Id. at 90; State v.Overcash (1999), 133 Ohio App.3d 90, 94. In order to classify an offender as a sexual predator, the state must show that the offender is currently likely to commit a sex crime in the future, not solely that he committed a sex crime in the past. This court recently stated, "a court may adjudicate a defendant a sexual predator so long as the court considers `all relevant factors[,]' which may include a sole conviction." State v. Purser (2003),153 Ohio App.3d 144, quoting State v. Ward (1999),130 Ohio App.3d 551, 560.
 {¶ 29} Here, the trial court did not err in classifying appellant as a sexual predator. The facts of this case show that appellant sexually assaulted the minor-victim on a continual basis. The testimony elicited at trial demonstrated a pattern of sexual conduct against the minor-victim and showed that appellant's sexual conduct was not an isolated incident. Appellant sexually terrorized his victim, which indicates that he is likely to reoffend in the future. Furthermore, pursuant to his Court Psychiatric Clinic Report, appellant scored moderately likely to reoffend. Combining that score with the facts of the case, the trial court did not err in finding clear and convincing evidence to make the sexual predator classification. Appellant's fourth assignment of error is overruled.
 Consecutive Sentence {¶ 30} In his final assignment of error, appellant argues that the trial court erred when it ordered his sentences to run consecutively without making the appropriate findings. The Ohio Supreme Court's recent decision in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, renders appellant's assignment of error without merit for the purposes of this appeal. In Foster, the Court found several sections of the revised code unconstitutional, including R.C. 2929.14(E)(4) and 2929.41(A) dealing with consecutive sentences, and severed the offending portions from the statutes. As a result, trial courts have full discretion to order multiple sentences to be run consecutively and are no longer required to make findings or state reasons for doing so. Foster, supra.
 {¶ 31} Because appellant's consecutive sentence was based on unconstitutional statutes, it is deemed void. Therefore, in accordance with the decision in Foster involving appeals with sentencing claims pending on review, we vacate appellant's sentence and remand this case to the trial court for a new sentencing hearing.
Conviction and sexual predator classification affirmed; sentence vacated and cause remanded for resentencing.
This cause is affirmed in part, vacated in part and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
McMonagle, J., and Blackmon, J., concur.
 APPENDIX A
Appellant's five assignments of error:
I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN APPELLANT'S CONVICTIONS.
II. THE APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
III. THE TRIAL COURT IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHT TO A FAIR TRIAL UNDER BOTH THE UNITED STATES AND OHIO CONSTITUTIONS WHEN THE COURT ALLOWED THE INTRODUCTION OF EVIDENCE THAT WAS MORE PREJUDICIAL THAN PROBATIVE.
IV. THE EVIDENCE IS INSUFFICIENT, AS A MATTER OF LAW, TO PROVE `BY CLEAR AND CONVINCING EVIDENCE' THAT APPELLANT `IS LIKELY TO ENGAGE IN THE FUTURE IN ONE OR MORE SEXUALLY ORIENTED OFFENSES.'
V. THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES IN VIOLATION OF R.C. 2929.14, R.C. 2929.19, AND IN VIOLATION OF THEFIFTH AMENDMENT DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION 16 OF THE OHIO CONSTITUTION.
[1] The minor-victims are referred to herein by their initials in accordance with this court's established policy regarding non-disclosure of identities of juveniles.
[2] Appellant's five Assignments of Error are included in Appendix A to this Opinion.